## WILLIS *v.* QUIMBY.

If a witness testifies that he saw "*a man they said was* J. M." the evidence is not open to the charge of being hearsay; its import is, *a man called J. M.*

Where circumstantial evidence is offered, of an exchange of horses, proof that a witness saw the parties trying the horses, is admissible as tending to show a negotiation for a trade.

The question, " What was the nature of the conversation between said parties, and were they in earnest, or was the talk a matter of joke between them ?" is not leading.

A witness stated as to a horse, "I think he was not then sound; he was called the rotten footed horse, soon after this, and his feet appeared to have a disease of long standing." The witness was not an expert. *Held*, the evidence was not matter of opinion, merely, but was a statement of a fact open to common observation.

An interrogatory as follows: " State whether or not Willis said at this time that he would acknowledge that there never had been any delivery of the horse," is leading.

TRESPASS, for taking and carrying away the plaintiff's horse.

The plaintiff introduced evidence tending to show that the defendant and one A. Quimby were partners, doing business under the firm of A. & J. Quimby, and that the horse was, on the day before that on which the trespass was alleged to have been committed, the property of the partnership; that on that day the said partners exchanged horses with the plaintiff, letting him have the horse in question, and receiving in payment another horse, and $10 in money; and that, on the next day, the defendant took the horse out of the plaintiff's possession.

The plaintiff introduced the deposition of G. W. Dewey, to prove, among other things, the taking by the defendant. The witness, in his deposition, said : " I saw Mr. C. Willis and a man they said was James M. Quimby, together at a barn," &c. The defendant objected to this, as being hearsay evidence. The court admitted the evidence, and instructed the jury that they might consider it as evidence tending to show that the plaintiff and a man who went by

the name of James M. Quimby, were together at the barn; and that they might consider this evidence in connection with other evidence, which tended to show that the defendant and Willis were together at the same time and place, for the purpose of determining whether the person whom the witness saw with the plaintiff, at that time, was in fact the defendant.

The plaintiff offered evidence tending to show that on the afternoon of the alleged sale, the plaintiff and A. Quimby were trying the horses in question; to which evidence the defendant objected. The court admitted the evidence, and told the jury that if they were satisfied that A. & J. were partners, and that the horse was partnership property, they might consider the evidence as tending, in connection with the other testimony, to show that the partners and the plaintiff were at that time negotiating about a trade; to which instruction the defendant excepted.

The deposition of A. Quimby was introduced by the defendant. The second interrogatory was as follows: " What was the nature of the conversation between said parties, and were they in earnest, or was the talk a matter of joke between them, at the time you said they conversed in the bar-room?" This interrogatory was objected to by the plaintiff, as leading; and it appearing that the plaintiff, though notified, was not present at the caption, the interrogatory and the answer to it were ruled out; to which ruling the defendant excepted.

Immediately following what was properly in answer to that interrogatory, but without any new interrogatory, the witness made a statement which, if it had been responsive to any proper interrogatory, would have been relevant. The counsel for the defendant, without referring the matter to the court, treated this as a part of the answer ruled out, and omitted to read it.

The same witness testified that Willis said, at the time of the alleged sale, that the horse was sound.

The next interrogatory was as follows: " From your sub-
sequent knowledge of the horse, state whether he was then
sound?" Answer: " I think he was not then sound; he
was called the rotten footed horse, soon after this, and his
feet appeared to have a disease of long standing."

This testimony was ruled out, because it did not appear
that the witness was an expert, and qualified to form and
express an opinion in regard to the diseases of horses; to
which ruling the defendant excepted.

The sixth interrogatory was as follows, viz: " State
whether or not Willis said at this time that he would ac-
knowledge that there never had been any delivery of the
horse." The interrogatory having been objected to at the
time of the caption, as a leading question, was, together
with its answer, ruled out; to which the defendant excepted.

The jury returned a verdict for the plaintiff, which the
defendant moves the court to set aside.

*H. & G. A. Bingham*, for the plaintiff.

*Rand*, for the defendant.

BELL, J. The objection of the defendant to the testimo-
ny of Dewey, and the instructions of the court relative to
it, does not seem to us well founded. The phrase, " a man
they said was James M Quimby," seems to us a colloquial
expression, equivalent to *a man called James M. Quimby*.
It seems to us to have none of the qualities of hearsay evi-
dence. The recital of a person as to a past transaction,
when repeated by a witness, is hearsay; while what is said
by persons present at a transaction, which is calculated to
throw light upon it, and give character to it, is admissible
as part of the transaction. The only knowledge men gen-
erally have of the names of others, is derived from the fact
that they hear them so called. To have heard a man so called

---
Willis *v.* Quimby.
---

on one occasion, may not be strong evidence, but it seems to us competent.

II.   The evidence tending to show the plaintiff and A. Quimby were trying the horses in question, was properly admitted, and the instruction relative to it proper.   Admitting the facts that A. & J. were partners, and owners of this horse, and that there were circumstances tending to show a negotiation for an exchange between them and the plaintiff, it was a circumstance proper to be considered and weighed by the jury.

III.   We are unable to perceive in the second interrogatory to A. Quimby, any thing of the character of a leading question.   " Leading questions" are defined by Phillips (Ev. 401) to be " such as instruct a witness how to answer on material points;" and he says, " Questions are objectionable as leading, not only when they directly suggest the answer which is desirable, but also when they embody a material fact, and admit of an answer by a simple negative or affirmative, though neither the one nor the other is directly suggested."   Starkie (Ev. 123,) and Greenleaf (1 Ev. 481,) give similar definitions.   This question seems to us not to fall within either branch of the definition.   It does not suggest the answer desired; it embodies no fact; and does not admit of a simple negative or affirmative answer.   It seems, therefore, to have been erroneously rejected.   No objection was taken at the time to the omission of that part of the answer which did not seem responsive to the question, and no objection can now be taken.   It seems to be assumed that if the evidence given by the witness is not properly an answer to the interrogatory proposed, it is to be rejected, but we are aware of no such rule.   By the 22d rule of Practice, depositions " are to be taken only upon answers to written interrogatories;" but it by no means follows that if a witness states, when inquired of, facts which are material to the case, they are to be omitted or rejected, because they are not properly in answer to the question.   The questions

are asked to draw from the witness what he knows relative to the case, and it is his duty to state all he knows, the whole truth; and though from embarrassment, or from any other cause, he fails to state material facts in their proper order and connection, or in answer to proper questions, his statements, if material, are nevertheless evidence, and neither courts nor juries can refuse to consider them.

The answers of a defendant in equity are not evidence in his favor, unless they are responsive to the bill. 2 Dan. Ch. Prac. 984, note. But the testimony of a witness as to matters material in a cause, is none the less evidence to be weighed, because it was not properly given in answer to questions either verbal or written. This question arose in the case of *Streeter* v. *Sawyer*, 8 Foster's Rep. 555, and the decision in that case is conclusive as to this matter.

IV. The answer which was rejected, because it did not appear that the witness was an expert, it seems to us should have been received. As to matters of fact, any witness may testify, but opinions of witnesses are not evidence. Experts alone can testify as to their opinions, so far as they relate to matters of the science, skill or trade in which they are conversant. *Railroad* v. *Greely*, 3 Foster's Rep. 243. If the substance of the answer, then, is an opinion upon a matter of science and skill, it was properly rejected. If it was in substance a statement of a matter of fact, open to the observation of common men, it was clearly admissible. That a horse's feet are diseased, and that he is unsound in his feet, is a matter of fact in some cases clearly open to the observation of every one, whether an expert or not. When, then, a witness testifies that a horse's feet appeared diseased, it appears to us a reasonable understanding of his meaning, to suppose he states what he saw, and not what he inferred as matter of skill and science from uncertain symptoms and indications.

The party who thinks an objection lies against the testimony of a witness, because it is matter of opinion merely,

has it in his power to make it clear how the fact is, by his cross-examination. That he does not do this, is a good reason for understanding a witness as intending to testify as to a matter of fact within his knowledge.

V. The sixth interrogatory, objected to as leading, seems to us to have been rightly rejected. To introduce a question with the words, *whether or not,* is a very common course to avoid the objection that the question is leading, and in most instances this alternative form will obviate the objection, but there is no virtue in this form, if the question assumes such a form in other respects as to direct the witness to the answer desired, or if it embodies a fact so as to make yes or no a sufficient answer. The question in this case does both. It points to an affirmative answer as the one desired, and yes is all the answer required.

Two of the defendant's exceptions being sustained, there must be

*A new trial.*